```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
  JASON B. NICHOLAS,                                        :
                                      Plaintiff,            :
                                                            :
              -v-                                           :
                                                            :       15-CV-9592 (JPO)
  WILIAM BRATTON, Commissioner, New York                    :
  City Police Department; STEPHEN DAVIS,                    :       OPINION AND ORDER
  Deputy Commissioner for Public Information,               :
  New York City Police Department; MICHAEL                  :
  DEBONIS, New York City Police Department;                 :
  and THE CITY OF NEW YORK,                                 :
                                      Defendants.           :
-------------------------------------------------------------X
```

J. PAUL OETKEN, District Judge:

Plaintiff Jason B. Nicholas, a professional photojournalist, filed this *pro se* action against Defendants William Bratton, Stephen Davis, Michael DeBonis, and the City of New York on December 8, 2015. (Dkt. No. 2.) Nicholas alleges that Defendants violated his First and Fourteenth Amendment rights by revoking his New York Police Department ("NYPD") press credential without due process and in retaliation for his criticism of the NYPD. (*Id.*) Nicholas has moved for a preliminary injunction compelling Defendants to return his press credential. (Dkt. No. 3.) The Court held oral argument on the motion for a preliminary injunction on May 12, 2016. For the reasons that follow, the motion is denied without prejudice.

I.   Background

Nicholas is a freelance photojournalist. (Dkt. No. 2 ("Compl.") ¶ 34.) He first received a press credential (or press pass) from the NYPD in 2007. (Compl. ¶ 12.) According to Nicholas, an NYPD press credential permits journalists to cross police lines in order to cover "crime scenes, parades, and other special events." (Compl. ¶ 18.) The credential also gives journalists "meaningful access" to "press conferences and other events held at Police Headquarters, the

Manhattan District Attorney's Office, City Hall, MTA Headquarters, and the Office of the United States Attorney for the Southern District of New York." (Compl. ¶ 17.)

The procedures for obtaining an NYPD press pass, and for contesting denial or revocation of the credential, are codified in sections 11-01 and 11-11 of Title 38 of the Rules of the City of New York. 38 R.C.N.Y. §§ 11-01, 11-11. Pursuant to section 11-11, any person whose press credential is summarily suspended may request a hearing before the NYPD ("Section 11-11 hearing"). *Id.* at § 11-11(b). That hearing must be provided within five business days of the journalist's request, and the Commanding Officer of the NYPD Office of the Deputy Commissioner, Public Information ("DCPI") must issue a written opinion explaining its decision within 45 days of the hearing. *Id.* at § 11-11(b)-(e). Journalists have a right to counsel at Section 11-11 hearings, *id.* at § 11-11(d), and according to Defendants' counsel, may challenge unfavorable decisions in an Article 78 proceeding. (*See* Preliminary Injunction Hearing Transcript ("Tr.") at 24.)

This suit arises from the summary revocation of Nicholas's NYPD press credential on October 30, 2015. (Compl. ¶ 26.) That day, Nicholas went to the scene of a building collapse in midtown Manhattan to obtain photographs for the *New York Daily News*. (*Id.*) It is undisputed that, while at the scene, Nicholas took photographs from inside a "frozen zone," *i.e.*, an area that the NYPD had designated as off-limits to certain journalists during the rescue effort. (Compl. ¶¶ 28-35.) Nicholas alleges that the frozen zone was created around him, without his knowledge, and that his presence in it was inadvertent. (Compl. ¶ 28.) Upon finding Nicholas in the frozen zone, Defendant DeBonis, an NYPD detective who manages press credentials, revoked Nicholas's press pass. (Compl. ¶¶ 9, 30, 32.)

On December 1, 2015, Nicholas wrote to DeBonis by email, asking to "come in and talk about [his] press card."[1] (Compl. ¶ 35; Pl. Ex. E.) DeBonis did not respond to Nicholas's request. (*See* Tr. at 6-8.) At oral argument, Nicholas stated that, when he emailed DeBonis in December 2015, he did not know that he could request a Section 11-11 hearing. (Tr. at 6 ("[B]efore this proceeding, I had no idea that such a hearing was even possible.").)

Nicholas filed this suit on December 8, 2015, and moved for a preliminary injunction the same day. In his Complaint, Nicholas alleges that the revocation of his press pass violated the First Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment. He also asserts a First Amendment retaliation claim. Specifically, Nicholas contends that the NYPD revoked his press credential in retaliation for a question he asked Police Commissioner William Bratton at a press conference on October 1, 2015. (Compl. ¶ 23.) In his motion for a preliminary injunction, Nicholas repeats the allegations concerning denial of his due process and First Amendment rights, but does not discuss equal protection. (Dkt. No. 4.) He seeks an order compelling the NYPD to return his press credential within seven days and to refrain from revoking his press pass without due process during the pendency of this suit. (Tr. at 5.)

---

[1] At oral argument, Nicholas submitted five exhibits and two affirmations, which the Court received provisionally, subject to objections by Defendants. (*See* Tr. at 1-4.) Defendants thereafter objected to all of the documents on grounds of timeliness and relevance, and to one exhibit ("Exhibit D") on the ground of hearsay. (Dkt. No. 25.) Having reviewed the documents in question, the Court overrules Defendants' objections. *See Mullins v. City of New York*, 626 F.3d 47, 52 (2d Cir. 2010) ("[T]he lower courts routinely consider hearsay evidence in determining whether to grant preliminary injunctive relief . . . . The admissibility of hearsay under the Federal Rules of Evidence goes to weight, not preclusion, at the preliminary injunction stage."). The two affirmations and all exhibits will be docketed in a separate Order along with this Opinion.

The Court held oral argument on Nicholas's motion for a preliminary injunction on May 12, 2016. Six days later, Defendants informed the Court that Nicholas had requested—and they had scheduled—a Section 11-11 hearing. (Dkt. No. 26.) That hearing was held on May 19, 2016, before the Commanding Officer of DCPI. (*See* Dkt. Nos. 25-28.) To date, no decision has been rendered on Nicholas's request for return of his press credential. (*Id.*)

## II.     Discussion

To be entitled to a preliminary injunction, a movant must establish (1) that it will suffer irreparable harm in the absence of preliminary relief; (2) a likelihood of success on the merits of the case; (3) that considering the balance of hardships between the plaintiff and the defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a preliminary injunction. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008); *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

While the decision to grant or deny a preliminary injunction "rests in the district court's sound discretion . . . a preliminary injunction is an extraordinary remedy that should not be granted as a routine matter." *Peck v. Montefiore Med. Ctr.*, 987 F. Supp. 2d 405, 410 (S.D.N.Y. 2013). Where, as here, a plaintiff seeks "[a] mandatory preliminary injunction that alters the status quo by commanding some positive act by the state," injunctive relief is warranted only upon "a *clear showing* that the moving party is entitled to the relief requested, or where *extreme* or *very serious* damage will result from a denial of preliminary relief." *Fishman v. Paolucci*, 628 F. App'x 797, 800 (2d Cir. 2015) (citation and internal quotation marks omitted).

### A.     Likelihood of Success on the Merits

Nicholas asserts that Defendants violated his "First Amendment right to gather and disseminate news," retaliated against him on the basis of protected speech, and revoked his credential without due process. (Dkt. No. 4 at 9.) Defendants argue that they had a non-

discriminatory, compelling reason to revoke Nicholas's pass: that he violated security protocol during an "ongoing emergency" effort to save a "trapped construction worker." (Dkt. No. 14 at 12.)  Defendants also argue that the Section 11-11 hearing process, and the availability of Article 78 proceedings, provides adequate process to protect any liberty or property interest Nicholas has in his press credential. (*Id.* at 16-17.)

Defendants' arguments prevail at this stage.  Courts have recognized that the First Amendment precludes arbitrary restrictions on a journalist's access to areas otherwise open to the press or the public. *See Stevens v. N.Y. Racing Ass'n, Inc.*, 665 F. Supp. 164, 175 (E.D.N.Y. 1987) ("[E]ven if a restriction which affords different degrees of access to members of the press is not content-based, the limitation must serve a legitimate governmental purpose, must be rationally related to the accomplishment of that purpose, and must outweigh the systemic benefits inherent in unrestricted (or lesser-restricted) access." (citation and quotation marks omitted)); *Sherrill v. Knight*, 569 F.2d 124, 129 (D.C. Cir. 1977) ("[T]he protection afforded newsgathering under the first amendment guarantee of freedom of the press requires that this access [to a White House press pass] not be denied arbitrarily or for less than compelling reasons."); *see also Huminski v. Corsones*, 396 F.3d 53, 84 (2d Cir. 2004) (citing *Sherrill*, 569 F.2d at 129-30).

The same authorities establish, however, that press access may be curtailed where there is a compelling reason—or perhaps simply a rational basis—for the restriction. *Stevens*, 665 F. Supp. at 175; *Sherrill*, 569 F.2d at 129.  Here, Nicholas concedes that Defendants took his press pass when he was in a "frozen zone" photographing an ongoing emergency rescue effort.  In light of this concession, and given the strict standard for mandatory injunctive relief, the Court

concludes that Nicholas has not met his burden of establishing a likelihood of success on the merits of his First Amendment claim.

Nicholas's retaliation claim presents the same concern. To state a First Amendment retaliation claim, Nicholas must show that: "(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. Cty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013). The Court need not and does not decide whether Nicholas has stated a plausible retaliation claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (distinguishing the plausibility standard from "a probability requirement"); *Lomax v. Aegis Funding Corp.*, No. 09-CV-2321, 2010 WL 1633440, at *2 (E.D.N.Y. 2010) ("Plausibility . . . does not refer to the likelihood of success on the merits of the legal claim, but asks whether a complaint's factual allegations are enough to raise a right to relief above the speculative level" (alterations and citation omitted)). Instead, the question is whether he has clearly demonstrated a *likelihood* of success on the merits, warranting injunctive relief. *Fishman*, 628 F. App'x at 800. Given that Defendants have presented a non-retaliatory account of the NYPD's motive for revoking Nicholas's press credential, the Court concludes that Nicholas has not met this high bar.

Finally, as to due process, to establish that his press pass was revoked in violation of the Fourteenth Amendment Due Process Clause, Nicholas must show, first, that he has a liberty or property interest in his NYPD press credential, and second, that he was deprived of the credential without due process of law. *Bryant v. N. Y. State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012). Nicholas has not met the standard for injunctive relief with respect to the second prong of this analysis. Even assuming that he has a liberty interest in his press pass, Nicholas has not clearly demonstrated (1) that he requested a Section 11-11 hearing prior to filing this suit, or (2) that

such a hearing, in conjunction with the availability of an Article 78 proceeding, is insufficient to satisfy the Due Process Clause.  *See Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 465-67 (2d Cir. 2006) (Sotomayor, J.) (analyzing when post-deprivation proceedings, including Article 78 hearings, provide constitutionally adequate process).  Indeed, Nicholas's process is ongoing: he has received a Section 11-11 hearing, and a decision on his press pass, which could moot his request for relief, is forthcoming from DCPI.  Even if he does not prevail at the Section 11-11 hearing, he has the ability to challenge that determination through an Article 78 proceeding in state court.  A mandatory injunction compelling the NYPD to return Nicholas's press pass is inappropriate in these circumstances.  *Peck*, 987 F. Supp. 2d at 410.

### B.     Remaining Factors

"In the absence of proof of likelihood of success on the merits, in order to establish eligibility for injunctive relief, plaintiff must prove that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in its favor."  *BigStar Entm't Inc. v. Next Big Star, Inc.*, 105 F. Supp. 2d 185, 219 (S.D.N.Y. 2000).  Nicholas must also establish that the public interest will not be disserved by an injunction, and that he will suffer irreparable harm in the absence of the requested relief.  *Winter*, 555 U.S. at 20.

Nicholas has not met this standard.  With respect to the equities and the public interest, the arguments are in equipoise at this stage of the case.  While Nicholas contends that Defendants deprived him of his rights, as well as a professional credential that is key to his occupational success, he has asked this Court to provide an equitable remedy—not just an order compelling a hearing, but the return of his press credential—before the Section 11-11 process is

complete.  While the hardship to Nicholas is significant, there is a competing interest in allowing the NYPD to render a decision on the merits before this Court intervenes.

Finally, with respect to irreparable harm, Nicholas argues, first, that revocation of his press pass has reduced his employment opportunities, and second, that violation of the First Amendment is *per se* irreparable harm.  (*See* Tr. at 16-17.)  The first argument fails because loss of employment "do[es] not constitute the irreparable harm necessary to obtain a preliminary injunction." *Peck*, 987 F. Supp. 2d at 412 (collecting cases); *see also Davis v. Billington*, 76 F. Supp. 3d 59, 65 (D.D.C. 2015) (noting, in a First Amendment retaliation case, that "courts have consistently held that . . . loss of employment" is not irreparable harm).  The second argument fails because, even if the Court may assume irreparable harm in this case, Nicholas has not satisfied the other prongs of the preliminary injunction standard.

### III.  Conclusion

For the foregoing reasons, Nicholas's motion for a preliminary injunction is denied.  Because the Court's analysis rests in part on the pendency of Nicholas's Section 11-11 hearing, the motion is denied without prejudice to renewal at a later date, if circumstances warrant such renewal.

The Clerk of Court is directed to close the motion at docket number 3.

SO ORDERED.

Dated: June 1, 2016
New York, New York

_____
J. PAUL OETKEN
United States District Judge

COPY MAILED TO PRO SE PARTY BY CHAMBERS