UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JASON B. NICHOLAS,

                               Plaintiff,

                        -v-

WILLIAM BRATTON, *Police Commissioner, New York City Police Department*, et al.,

                              Defendants.

15-CV-9592 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

      Plaintiff Jason B. Nicholas brings this civil rights action against Defendants the City of New York ("the City"), William Bratton, Stephen Davis, Eugene Whyte, and Michael DeBonis pursuant to 42 U.S.C. Section 1983 ("Section 1983"), alleging violations of his First, Fourth, and Fourteenth Amendment rights. (Dkt. No. 126 ¶¶ 159–64.) On March 26, 2019, the Court issued an Opinion and Order ("the Opinion") addressing the parties' cross-motions for summary judgment. (Dkt. No. 219.) Before the Court now is Plaintiff's motion for partial reconsideration of the Opinion, or, in the alternative, for leave to file a third amended complaint. (Dkt. No. 223.) For the reasons that follow, Plaintiff's motion is denied.

**I**

      Familiarity with the Court's March 26, 2019 Opinion addressing the parties' cross-motions for summary judgment on Nicholas's non-*Monell* claims is presumed.[1] *See Nicholas v. Bratton*, No. 15 Civ. 9592, 2019 WL 1369462 (S.D.N.Y. Mar. 26, 2019). In brief, at issue in this

---

[1] As the Court explained in the Opinion, the recent summary judgment motions addressed only Nicholas's claims against Davis and DeBonis in their individual capacities, as discovery for Plaintiff's *Monell* claims has been bifurcated. (Dkt. No. 219 at 2–3 & n.2; *see also* Dkt. No. 67.)

1

suit are Nicholas's challenges to the seizure of his City-issued press credential by officers of the New York City Police Department at the scene of a partial building collapse in Midtown Manhattan. The factual and procedural background of this dispute is summarized more fully in the Opinion. *See id.* at \*1–13.

As is relevant here, in the Opinion the Court allowed Nicholas's First Amendment claims to proceed against Defendants DeBonis and Davis in their individual capacities only insofar as those claims were predicated on a theory of viewpoint discrimination. *See id.* at \*14–31. On April 9, 2019, Nicholas moved for partial reconsideration of the Opinion's First Amendment analysis, or, in the alternative, for leave to file a third amended complaint. (Dkt. No. 223.) The motion is fully briefed (Dkt. Nos. 224, 227, 229), and the Court is now prepared to rule.

## II

"A motion for reconsideration is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Drapkin v. Mafco Consol. Grp., Inc.*, 818 F. Supp. 2d 678, 695 (S.D.N.Y. 2011) (citation and internal quotation marks omitted). To prevail, the movant must demonstrate either "(1) an intervening change in controlling law; (2) the availability of new evidence[;] or (3) a need to correct a clear error or prevent manifest injustice." *Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578, 580–81 (S.D.N.Y. 2013) (quoting *Drapkin*, 818 F. Supp. 2d at 696); *see also Cioce v. Cty. of Westchester*, 128 F. App'x 181, 185 (2d Cir. 2005) (summary order) ("Generally, motions for reconsideration are not granted unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." (quoting *In re BDC 56 LLC,* 330 F.3d 111, 123 (2d Cir. 2003) (internal quotation marks omitted), *abrogation on other grounds recognized by In re Zarnel*, 619 F.3d 156, 167 (2d Cir. 2010))).

2

"A motion for reconsideration is not an opportunity for making new arguments that could have been previously advanced." *Liberty Media Corp. v. Vivendi Universal, S.A.*, 861 F. Supp. 2d 262, 265 (S.D.N.Y. 2012) (internal quotation marks omitted). Accordingly, a party's "attempt to raise new arguments on reconsideration is itself sufficient to warrant rejecting them." *Collins v. City of New York*, No. 14 Civ. 8815, 2019 WL 1413999, at *4 (S.D.N.Y. Mar. 29, 2019).

### III

In its Opinion, the Court denied the parties' cross-motions for summary judgment on Nicholas's First Amendment claims to the extent that those claims alleged that the seizure of his press credential was discriminatory. *Nicholas*, 2019 WL 1369462, at *16–24, *30–31. But the Court granted on qualified immunity grounds Defendants Davis and DeBonis's motion for summary judgment to the extent that Nicholas's First Amendment claims alleged that the seizure of his press credential reflected an unlawful time, place, and manner restriction. *Id.* at *31.

In arguing for reconsideration of this latter point, Nicholas claims that the Court failed to take into account that Defendants reacted to his violation of the City's time, place, and manner restriction not by simply removing him from the premises, but instead by confiscating his press credential "for eight months without providing notice of how to get it back." (Dkt. No. 224 at 1.) According to Nicholas, the First Amendment implications of Defendants' eight-month confiscation of his credential had been "fully briefed by both parties in their cross motions for summary judgment," and Nicholas submits that "[h]ad the Court considered this issue, . . . it would have granted summary judgment in Plaintiff's favor on [his] First Amendment claim." (*Id.*)

In response, Defendants contend, among other things, that the operative complaint failed to adequately plead a First Amendment claim predicated on Defendants' prolonged retention of

3

Nicholas's press credential, and that to the extent the complaint *does* plead such a claim, Nicholas failed to adequately invoke it when moving for summary judgment. (Dkt. No. 227 at 1–7.)

The Court concludes that Nicholas's operative complaint (*see* Dkt. No. 126), which was filed when Nicholas was representing himself *pro se*, should be construed to have raised a First Amendment claim against Defendants Davis and DeBonis in their individual capacities based on their eight-month-long seizure of Nicholas's press credential. However, the Court agrees with Defendants that Nicholas's summary judgment papers failed to demonstrate as a matter of law that the prolonged nature of the seizure of Nicholas's credential amounted to a violation of the First Amendment. This is because Nicholas challenged the eight-month seizure of his press credential only in the context of his time, place, or manner arguments based on the City's "frozen zone" policy as it was applied on October 30, 2015, arguments that the Court fully addressed in the Opinion. Because Nicholas calls for reconsideration of the Opinion's First Amendment analysis based on contentions that he did not effectively raise when moving for summary judgment, he fails to identify an adequate basis for reconsideration.

**A**

The parties disagree with respect to whether Nicholas's operative complaint (*see* Dkt. No. 126), which was filed when Nicholas was still representing himself *pro se*, should be construed to have raised a First Amendment claim against Defendants Davis and DeBonis in their individual capacities based on the prolonged confiscation of his press credential. (*Compare* Dkt. No. 224 at 11–17, *with* Dkt. No. 227 at 6–7.)

"It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they *suggest*.'" *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (quoting *Pabon v. Wright*, 459 F.3d

4

241, 248 (2d Cir. 2006)). This duty is especially pressing "when the *pro se* plaintiff alleges that her civil rights have been violated," *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), because the purpose of affording liberal construction to *pro se* filings is fundamentally to protect "*pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training," *Triestman*, 470 F.3d at 475 (internal quotation marks omitted). Fulfilling this duty requires courts to look primarily to the *facts* underlying a *pro se* party's allegations, rather than to the specific legal theory or authority relied upon. *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 158 (2d Cir. 2017) (per curiam) ("[T]he failure [of a *pro se* litigant] in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim. . . . [F]actual allegations alone are what matters." (quoting *Albert v. Carovano*, 851 F.2d 561, 571 n.3 (2d Cir. 1988) (en banc))).

This case presents an added wrinkle, because Nicholas now asks the Court to continue to liberally construe his *pro se* pleading even after he has retained counsel. Some courts in this Circuit have declined to afford a liberal construction to *pro se* papers after counsel has been retained and has had a sufficient opportunity to amend the *pro se* submissions. *See, e.g.*, *Rose v. Garritt*, No. 16 Civ. 3624, 2018 WL 443752, at *4 n.6 (S.D.N.Y. Jan. 16, 2018) (declining to construe *pro se* plaintiff's complaint liberally where plaintiff "later obtained counsel who had an opportunity to file an amended complaint but ultimately adopted Plaintiff's pro se complaint as 'the operative complaint'" (citations omitted)). But the majority of courts have continued to afford liberal construction to *pro se* pleadings even where counsel takes over the case at a later stage. *See, e.g.*, *Gonzalez v. J.P. Morgan Chase Bank, N.A.,* 228 F. Supp. 3d 277, 283 n.3 (S.D.N.Y. 2017) ("[T]he plaintiff initially brought this action proceeding *pro se*. Because counsel was retained after the Amended Complaint and the opposition to the motions to dismiss were filed, the motions to dismiss are treated as if they are directed against the pleadings of a *pro*

5

*se* litigant."); *Perdum v. Forest City Ratner Cos.,* 174 F. Supp. 3d 706, 718 (E.D.N.Y. 2016) ("Because Plaintiff was *pro se* at the time of filing his amended complaint, the Court construes his pleadings liberally. . . ."); *Holmes v. Parade Place, LLC*, No. 12 Civ. 6299, 2013 WL 5405541, at *7–8 (S.D.N.Y. Sept. 26, 2013) (affording liberal construction to *pro se* plaintiff's complaint when adjudicating defendants' motions to dismiss even though plaintiff had retained counsel to brief the motions to dismiss).

The Court agrees with the approach adopted in these latter cases, which appear to more closely adhere to the Second Circuit's directive to protect "*pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training," *Triestman*, 470 F.3d at 475 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). This approach is particularly appropriate in this case, where counsel appeared on behalf of the *pro se* party over one-and-a-half years after this case had been initiated (*compare* Dkt. No. 1, *with* Dkt. Nos. 106–08), and only after the *pro se* party's contested motion for leave to file the operative amended complaint had been fully briefed by the *pro se* party and granted by the Court in a reasoned opinion (*see* Dkt. Nos. 88–90, 95, 99). Accordingly, and despite the fact that Nicholas is currently represented by counsel, this Court will apply the Second Circuit's fact-based approach for purposes of determining what claims Nicholas has pleaded in this action. *See McLeod*, 864 F.3d at 156–58; *see also Soto v. Walker*, 44 F.3d 169, 170 (2d Cir. 1995) (instructing district courts not to be "misled by [a *pro se* party's] inability to articulate pellucidly the strongest basis for [a] claim").

Applying that approach here, the Court concludes that the operative complaint should be read to include a First Amendment claim against DeBonis and Davis in their individual capacities in connection with the eight-month confiscation of his press credential. The prolonged nature of the seizure of Nicholas's press credential is one of the central facts pleaded by Nicholas

in the operative complaint; indeed, Nicholas repeatedly alleges facts relating to the duration of this seizure and the injuries it caused him. (*See, e.g.*, Dkt. No. 126 ¶¶ 5 ("Besides removing Plaintiff from the scene, Defendants Davis and DeBonis summarily revoked Plaintiff's NYPD-issued press credential . . . ."); 156 ("As a result of the Defendants' revocation of Plaintiff's NYPD-issued press credential, Plaintiff's news-gathering activity has been significantly abridged . . . ."); 160 (alleging constitutional violation by Davis and DeBonis "when they abridged Plaintiff's news-gathering activity . . . [by] revoking his press credential"); 164 (alleging constitutional violation by all Defendants when they "interfer[ed] with news-gathering by . . . arbitrarily confiscating NYPD-issued press credentials from news-gatherers"). These allegations indicate that Nicholas intended to challenge Defendants' prolonged seizure of his credential, even if his lack of legal training prevented him from clearly articulating the full range of legal theories under which he could do so.

In arguing for a contrary conclusion, Defendants make much of the fact that the paragraph in which Nicholas articulates his First Amendment claims against Davis and DeBonis in their individual capacities neglects to repeat his allegations with respect to their seizure of his credential. (*See* Dkt. No. 126 ¶ 159; Dkt. No. 227 at 6–7.) But the Second Circuit has instructed courts not to limit their consideration of a *pro se* litigant's pleadings to the validity or scope of the specific legal theories expressly pleaded therein. *McLeod*, 864 F.3d at 156–58; *Soto*, 44 F.3d at 173. To so limit the scope of constitutional claims asserted by a *pro se* litigant's pleading would result only in the "inadvertent forfeiture of important rights because of [his] lack of legal training." *Triestman*, 470 F.3d at 475 (quoting *Traguth*, 710 F.2d at 95). Instead, this Court is obligated to construe Nicholas's pleading "to raise the strongest arguments that [it] *suggest*[*s*].'" *Id.* at 474 (quoting *Pabon*, 459 F.3d at 248). Here, Nicholas's repeated and extensive allegations regarding the prolonged seizure of his credential clearly *suggest* an attempt to invoke any rights,

7

including First Amendment rights, potentially infringed by that seizure. Indeed, Defendants cannot seriously dispute that they too were aware that the operative complaint could be read to suggest a First Amendment claim predicated on the seizure of Nicholas's press credential, as DeBonis and Davis noted the possibility of such a claim when briefing their own summary judgment motion—albeit with the caveat that they believed that "Plaintiff did not plead [such a] claim in his Second Amended Complaint against [them]." (Dkt. No. 184 at 17–18 & n.12.)

Accordingly, Nicholas's pleading should be construed to have asserted a First Amendment claim against Defendants Davis and DeBonis in their individual capacities based on the prolonged seizure of his press credential.[2]

**B**

Even though the operative complaint can be construed to assert a First Amendment claim against Davis and DeBonis in their individual capacities based on the prolonged seizure of Nicholas's press credential, the Court agrees with Defendants that Nicholas failed to articulate a valid basis for his entitlement to judgment as a matter of law on this claim at the summary judgment stage. Nicholas's failure to have done so justified the denial of his motion for summary judgment with respect to this alleged First Amendment violation, and also precludes granting the instant motion for reconsideration.

When moving for summary judgment, Nicholas examined the First Amendment implications of Defendants' seizure of his press credential only in the context of his challenges to the City's enforcement of the October 30, 2015 "frozen zone," doing so with reference to the time, place, or manner rubric for regulation of First Amendment activities in public fora. (*See*

---

[2] Because the Court concludes that Nicholas has adequately pleaded a First Amendment claim against DeBonis and Davis in their individual capacities based on the seizure of his credential, Nicholas's motion for leave to replead to assert such a claim is denied as moot. (*See* Dkt. No. 224 at 17–18.)

Dkt. No. 187 at 15–17 (articulating legal standards governing time, place, and manner restriction legal standards); 20–24 (applying those standards to "the confiscation and indefinite seizure of Mr. Nicholas' press credential," *id.* at 23).) The Court has already explained why Defendants Davis and DeBonis are entitled to summary judgment on Nicholas's claim that the City enforced an unlawful time, place, and manner restriction against him in the form of the October 30, 2015 frozen zone.[3] *See Nicholas*, 2019 WL 1369462, at *24–27. As the Court explained in the Opinion, Davis and DeBonis were entitled to qualified immunity on Nicholas's time, place, and manner claim predicated on the frozen zone, even though genuine disputes of fact existed with respect to both the reasonableness of the tailoring of the time, place, or manner restriction that was the October 30, 2015 frozen zone, and the adequacy of alternative channels available to those seeking to gather news at the scene. *See id.* at *25–27, *31. In moving for reconsideration, Nicholas presents no new facts and identifies no legal error underlying that conclusion.

The Court reiterates that with respect to Defendants' enforcement of the October 30, 2015 frozen zone, it remains true that if a jury were to credit Nicholas's evidence showing that the frozen zone was overbroad, then the enforcement of that zone as against Nicholas and the resulting seizure of his credential would indeed amount to a First Amendment violation. In contrast, and as the Court exhaustively discussed in the Opinion when addressing Nicholas's time, place, and manner arguments, a different conclusion would hold if a jury were to credit Defendants' evidence showing that the City's regulations on press access to West 38th Street on October 30, 2015 were necessary for purposes of protecting life and public safety. Either way,

---

[3] To the extent that Nicholas faults the Court for failing to explicitly address his argument that the seizure of his press credential at the scene of the collapsed building somehow rendered Defendants' time, place, and manner restriction overbroad as a matter of law, the Court clarifies below why it found that argument unpersuasive.

the Court explained, assuming that Defendants had not acted out of a desire to discriminate on the basis of viewpoint, Nicholas pointed to no authority that would have rendered it objectively unreasonable for Defendants to believe that their actions at the scene were lawful. Thus, to the extent that Nicholas seeks reconsideration of the Court's conclusion that DeBonis and Davis were entitled to summary judgment on a time, place, and manner claim predicated on their seizure of his credential *at the scene of the building collapse*, Nicholas has given the Court no reason to second-guess its determination that DeBonis and Davis are protected by qualified immunity.

In seeking reconsideration, Nicholas zooms out, focusing primarily on Defendants' seizure of his "press credential for eight months without providing notice of how to get it back." (Dkt. No. 224 at 1.) But Defendants' eight-month-long seizure of Nicholas's credential cannot be construed as Defendants' eight-month-long enforcement of the time, place, and manner restriction that was the October 30, 2015 frozen zone. Instead, the prolonged nature of Defendants' retention of Nicholas's press credential implicates First Amendment concerns entirely distinct from the City's management of a specific rescue operation in a manner that infringed upon the public's right to gather news in public spaces.

Nicholas, who had the aid of counsel when deciding which legal frameworks to apply in arguing his summary judgment motion, continues to err in asserting that Defendants' prolonged retention of his press-credential ought to be evaluated by considering whether this continued retention was justified based on the exigencies of an emergency rescue that had concluded months earlier. (*See, e.g.*, Dkt. No. 187 at 23 ("[T]he confiscation and indefinite seizure of Mr. Nicholas' press credential was a plainly overbroad means of enforcing Defendants' alleged safety concerns."); Dkt. No. 224 at 7 ("Defendants' confiscation of Nicholas' press credential for nearly eight months without notifying him how he could get it back . . . ignored numerous less

speech-restrictive alternatives that could have readily addressed any legitimate safety concerns.").) The time, place, and manner restriction that Nicholas is seeking to challenge here does not concern the physical limitations placed on his ability to access the scene of the building collapse, but rather relates to the consequences of his having violated those limitations. Nicholas has pointed to no authority that analyzes time, place, and manner restrictions this way. *Cf. McCullen v. Coakley*, 573 U.S. 464, 486–96 (analyzing reasonableness of a time, place, and manner restriction by considering the extent of speech restricted without reference to punishments for violations of the challenged restrictions); *Ward v. Rock Against Racism*, 491 U.S. 781, 793–803 (same). At the very least, then, Defendants Davis and DeBonis are entitled to qualified immunity on this claim, given the lack of case law that considers the consequences of violating a time, place, and manner restriction as part of the tailoring inquiry when assessing that restriction. To have obtained summary judgment against Davis and DeBonis on his First Amendment claim predicated on the prolonged seizure of his credential, Nicholas would have needed to make entirely different arguments, based on a categorically distinct First Amendment analysis.

The First Amendment doctrine that best fits the contentions Nicholas now raises is one that Nicholas failed to properly address when moving for summary judgment: the prior-restraint doctrine.[4] A prior restraint is a "regulation that 'g[i]ve[s] public officials the power to deny use

---

[4] In a footnote in his reply brief, Nicholas asserted for the first and only time, and in just two sentences, that the facts surrounding Defendants' "suspension or revocation of Nicholas' press card . . . also amounted to a prior restraint on Nicholas' right to gather news." (Dkt. No. 207 at 9 n.6.) Nicholas's having done so was an insufficient method for putting this contention before the Court on summary judgment. This is true both because "courts 'ordinarily will not consider issues raised for the first time in a reply brief,'" *Horowitz v. Nat'l Gas & Elec., LLC*, No. 17 Civ. 7742, 2018 WL 4572244, at *4 n.3 (S.D.N.Y. Sept. 24, 2018) (quoting *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009)), and because "arguments raised [only] in footnotes need not be addressed," *United States v. Mendlowitz*, No. 17 Cr. 248, 2019 WL 1017533, at *7 n.11 (S.D.N.Y. Mar. 2, 2019) (collecting cases); *see also Levy v. Young*

of a forum in advance of actual expression.'" *Hobbs v. Cty. of Westchester*, 397 F.3d 133, 148 (2d Cir. 2005) (alterations in original) (quoting *Se. Promotions, Ltd. v. Conrad,* 420 U.S. 546, 553 (1975)). The Second Circuit has recently confirmed that the prior-restraint framework may govern challenges to "[f]acially content-neutral laws that require permits or licenses of individuals or entities engaged in certain forms of expression," explaining that such licensing laws may "constitute prior restraints when they (1) disallow that expression unless it has previous permission from a government official and (2) vest that official with enough discretion that it could be abused." *Citizens United v. Schneiderman*, 882 F.3d 374, 387 (2d Cir. 2018) (footnote omitted); *see also FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 223–30 (1990) (plurality opinion) (concluding that a city's licensing scheme for "sexually oriented businesses" was an impermissible prior restraint where the scheme failed to include a time limit within which the city was obliged to make a licensing decision). The prior restraint framework has also been used to analyze as-applied challenges to one-off restrictions imposed by courts and local governments on the gathering and dissemination of particular newsworthy events. *See, e.g.*, *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 562 (1976) (considering as-applied challenge to trial court's pretrial gag order by "examin[ing] the evidence before the trial judge when the order was entered to determine . . . whether the record support[ed] the entry of a prior restraint on publication"); *see also Bantam Books v. Sullivan*, 372 U.S. 58, 70–72 (1963) (sustaining prior-restraint challenge to state's censorship regime based on "[w]hat [state] has done, in fact" pursuant to the system and the Court's assessment that the "record shows plainly that [state officials] went f[a]r beyond" what was permissible).

---

*Adult Inst.*, 103 F. Supp. 3d 426, 441 (S.D.N.Y. 2015) (denying consideration of "drastically underdeveloped" argument raised in footnote in reply brief).

The First Amendment interests implicated by the arguments raised by Nicholas in the instant motion belong under the prior-restraint framework for addressing licensing schemes that preemptively bar the future enjoyment of First Amendment liberties. For example, Nicholas repeatedly notes that the prolonged seizure of his credential resulted in a "disproportionate ban on his ability to gather news at other *future* breaking news scenes." (Dkt. No. 224 at 7 (emphasis added).) In asserting that the prolonged seizure of his credential restrained his ability to gather news for future speech "in advance of its actual expression,'" Nicholas is raising a prior-restraint argument. *Citizens United*, 882 F.3d at 386 (quoting *United States v. Quattrone*, 402 F.3d 304, 309 (2d Cir. 2005)). Similarly, Nicholas repeatedly argues that Defendants violated the First Amendment because they failed to "allow[] him to get the credential back and resume his coverage of breaking news promptly, instead of confiscating it for eight months." (Dkt. No. 224 at 8.) Defendants' delay in returning what was functionally Nicholas's newsgathering license, and its impact on his ability to conduct future newsgathering, implicated the Supreme Court's concerns regarding "prior restraint[s] that fail[] to place limits on the time within which the decisionmaker must issue the license." *FW/PBS, Inc.*, 493 U.S. at 226 (plurality opinion); *see also id.* at 227 ("A scheme that fails to set reasonable time limits on the decisionmaker creates the risk of indefinitely suppressing permissible speech."). When moving for summary judgment, Nicholas failed to address whether the prolonged nature of his press credential's seizure operated as a prior restraint on his future newsgathering in violation of the First Amendment.

It is perhaps also true that to the extent that the City's press-credentialing system as a whole places overbroad and categorical access restrictions on journalists' newsgathering, those restrictions might be analyzed under the rubric of time, place, and manner, as well as prior restraint. But the time, place, or manner restriction that would be the subject of such an analysis would have to be the City's general rules and regulations for the issuance, revocation, and

suspensions of press credentials, *see, e.g.*, 38 NYCR § 11-01 *et seq.*, not the City's frozen-zone policy as it was applied on October 30, 2015. Because Nicholas's challenges to the City's licensing scheme writ large are not presently before the Court, the Court need not consider that question. In the context of the as-applied claims as to which Nicholas sought summary judgment, it suffices to say that Nicholas's continued and exclusive focus on Defendants' failure to justify the prolonged suspension of his credential with reference to the safety concerns of one particular building collapse missed the mark. This is because at some point after the seizure of Nicholas's credential, Defendants' continued possession of the credential ceased to be fairly construed as Defendants' enforcement of the only time, place, and manner restriction challenged in Nicholas's summary judgment papers, and instead was effectuated pursuant to the City's broader press-credentialing system.

Nicholas has yet to address the merits of that system in the First Amendment context,[5] and his failure to have done so precludes granting Nicholas judgment as a matter of law on his First Amendment claims to the extent predicated on the prolonged nature of the seizure of his credential. Because Nicholas failed to put these questions before the Court at the summary judgment stage, it would be improper to consider them in the first instance in connection with a motion for reconsideration. Nicholas's motion for reconsideration must therefore be denied.

---

[5] It bears repeating that Nicholas *did* fully brief the constitutional deficiencies of Defendants' processes for managing and adjudicating challenges to suspensions of press credentials as part of his procedural due process arguments, and neither party has moved for reconsideration of the Court's conclusion that Defendants' conduct following their seizure of Nicholas's press credential "fell short of the requirements of procedural due process." *See Nicholas*, 2019 WL 1369462, at *34. The present motion for reconsideration is addressed only to whether that same conduct violated the First Amendment as well.

**III**

For the foregoing reasons, Plaintiff's motion for reconsideration is DENIED, and Plaintiff's motion for leave to file an amended pleading is DENIED as moot.

The parties are directed to confer regarding further proceedings and to submit a joint letter addressing the parties' proposals within seven (7) days of the date of this order.

The Clerk of Court is directed to close the motion at Docket Number 223.

SO ORDERED.

Dated: May 23, 2019
       New York, New York

                                             J. PAUL OETKEN
                                           United States District Judge